# EXHIBIT A

1    IN THE UNITED STATES DISTRICT COURT
2         FOR THE DISTRICT OF MARYLAND
3
4  VANEICA MACK-EPPS
5           Plaintiff
6  vs.                          Case No. 1:2011cv00530
7  SUPERVALU, INC.
8           Defendant
9  _____/
10
11
12         The deposition of STANLEY SMOOT was held on
13  Wednesday, August 17, 2011, commencing at 10:00 a.m.,
14  at the Law Offices of Parler & Wobber, LLP, 406 East
15  Joppa Road, Towson, Maryland 21286, before Paula J.
16  Eliopoulos, Notary Public.
17
18
19
20
21  REPORTED BY:  Paula J. Eliopoulos

```
 1              MR. RICHARDS:  Yes.
 2       Q      Is there anything else you brought with
 3  you today?
 4       A      No.  They're all the same thing just
 5  saying to come here.
 6       Q      I don't want anything that's
 7  attorney-client privileged.
 8       A      That's it.
 9       Q      Okay.  All right.  Great.
10              So, I'd like you to review what I just
11  handed you, Deposition Exhibit Number 1.  Review it
12  first yourself and then we can talk about it.
13       A      Okay.
14       Q      Have you ever seen that document before?
15       A      No, I have not.
16       Q      What is your understanding as to why
17  you're here today?
18       A      I'm here to give -- to testify on what
19  happened on the incident.
20       Q      Are you aware -- strike that.
21              Are you here today to testify as the
```

1  corporate designee for Shoppers?
2       A    Yes.
3       Q    Are you aware that on August 8th we took a
4  deposition of Michael Balderson as the corporate
5  designee?
6       A    No.
7       Q    So, to your knowledge, is Michael
8  Balderson going to be acting as a corporate designee?
9       A    Not that I know of.
10      Q    I'd like to go over the Notice To Take
11 Deposition with you.
12           And, for the record, this deposition was
13 continued from August 8th because Mr. Balderson was
14 not prepared and was not apparently the appropriate
15 person to testify.
16           The deposition has been continued today,
17 that is, the deposition of the corporate designee.
18 Although the Notice does say August 8th, we are
19 continuing today with a new corporate designee, which
20 is you.
21           On page two we have documents to be

```
 1   terms of cleanup on the store?
 2        A    No.
 3        Q    So, say somebody spilled mayonnaise in
 4   aisle five, it would just be taken care of, but there
 5   would be no record of it?
 6        A    No.
 7        Q    What are your policies for preventing
 8   produce from falling on the floor?
 9        A    There's really none.  Now, I know like
10   under the wet fruit and the greens, we have rugs.
11        Q    What is a wet fruit?
12        A    Wet fruit is like your grapes, your
13   watermelon, apples, stuff that people are going to
14   drop and --
15        Q    And it turns wet?
16        A    Yes.  Yes.
17        Q    And so, at the time of this incident,
18   under the wet fruit, the grapes, did you have a rug?
19        MR. RICHARDS:  Objection.
20        A    I can't remember.
21        Q    Have you looked at the store security
```

```
                                                          52
 1   video?
 2        A    I want to say yes, but that was last year
 3   probably.
 4        Q    Why did you look at it last year?
 5        A    Because I asked one of the security guards
 6   to make a copy for me.
 7        Q    So, it was at the time of the incident?
 8        A    Yes.
 9        Q    Would your -- well, strike that.  Let me
10   just take a look at it.
11             When we look at it, I'd like you to tell
12   me if you see a rug on the floor.
13        A    Okay.
14        Q    And is there a policy for placing the mats
15   in certain places, space them to be so far, is it a
16   continuous mat?
17        A    It's not a policy, but they come and they
18   asked us to put rugs underneath the grapes and the
19   greens because we have -- and then like we used to
20   have water that comes onto the vegetables to keep them
21   fresh.  So, we have rugs and stuff there so people
```

```
 1  won't slip and fall.
 2      Q    So, you had a spray that comes down?
 3      A    Uh huh.
 4      Q    At the time of this incident, did they
 5  have a spray?
 6      A    Not on the grapes.
 7      Q    But they were still considered a wet
 8  fruit?
 9      A    Yes.
10      Q    And so, there should be a mat underneath
11  the grapes --
12      A    Yes.
13      Q    -- to prevent spills or to prevent slips?
14           And that was the purpose of the mats;
15  right?
16      A    Right.
17      Q    Let's take a look at the video.  Maybe
18  your attorney can bring this up.  Let's see.
19           (Pause in the proceedings.)
20      Q    Can you point on this picture to where the
21  grapes are?
```

1  one near the left side of the rack, kind of in the
2  middle or the center of the screen.
3         MS. WOBBER:  Okay.
4     Q    Now, I see on the left of the screen, it
5  looks like there's a mat that runs a continuous mat up
6  and down against the wall?
7     A    Up there, yes.
8     Q    Are there any mats running perpendicular
9  to that?
10        MR. RICHARDS:  Objection.
11    Q    Do you know whether at the time of the
12 incident whether there were any mats?
13    A    Down in the -- you're talking about down
14 in the aisles?
15    Q    Yes.
16    A    I don't know.  There should be.
17    Q    When Mrs. Epps fell, did you see any mats
18 there?
19    A    I can't remember.
20    Q    So, let's run the video and see if we see
21 it.